| | AUSA: | Frances Lee Carlson | Telephone: | (313) 226-9696 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Mark E. Davis, ATF | Telephone: | (818) 265-8034 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
   v.

James McGhee
John Steven Tolbert
Kenyetta Nicole Colston

Case No.   2:20-mj-30418
Judge: Unassigned,
Filed: 10-06-2020 At 11:44 AM
SEALED MATTER (krc)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___August 26, 2020 to September 2, 2020___ in the county of _____Wayne_____ in the
_____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC, Sections 841(a)(1) and 846 | Conspiracy to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Mark E. Davis, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _October 6, 2020_____

City and state: ~~Detroit, Michigan 48226~~ Bay City, Michigan

_____
*Judge's signature*

Patricia T. Morris, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF SPECIAL AGENT MARK DAVIS IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Mark Davis, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, hereby declare and state:

## I. PURPOSE OF THE AFFIDAVIT

1.      I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 801, et. seq. and 18 U. S.C. § 2516.

2.      The facts set forth in this Affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested criminal complaint and arrest warrants. Thus, this Affidavit does not set forth all of my knowledge of this investigation. Unless specifically indicated otherwise, all conversations and statements described in this Affidavit are related in substance and in part only.

3.      Based on the facts set forth in this Affidavit, there is probable cause to believe that from in or about August 26, 2020 and continuing through in or about September 2, 2020, in Detroit, Michigan, James MCGHEE, John Steven TOLBERT, and Kenyetta Nicole COLSTON knowingly and voluntarily conspired and agreed to distribute a controlled substance, to wit: crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## II. AFFIANT BACKGROUND AND EXPERIENCE

4.      I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Detroit Field Division, Detroit Group III Field Office. I have completed the following professional training at the Federal Law Enforcement Training Center ("FLETC"), Glynco, Georgia: Criminal Investigator Training Program (12 weeks) and Special Agent Basic Training at the ATF National Academy, located at FLETC (14 weeks). I also received specialized training while attending the academies at FLETC, concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the Controlled Substance Act within Title 21 of the United States Code. The specialized training that I have received includes but is not limited to: surveillance, interviewing, writing of warrants, handling of evidence, arrest procedures, search procedures,

2

and testifying in court. Since beginning my ATF career in December 2014, I have actively participated in a high volume of cases involving prohibited persons possessing firearms, persons trafficking firearms and controlled substances, persons possessing illegal firearms, persons affiliated with gang activity, and persons who have committed arson. I have also interviewed confidential informants, witnesses, cooperating defendants, criminal defendants, and other persons engaged in violations of federal law. During my time as a Special Agent in the ATF Los Angeles Field Division, I participated in over 200 law enforcement operations with federal joint task forces and state and local police involving the investigation of violations of firearms, arson, and narcotics laws.

### III. PROBABLE CAUSE

5.      Probable cause has been established from records, surveillance, and information provided by an ATF Undercover (UC) Agent and a reliable ATF Confidential Informant (CI). The following information summarizes the events that establish probable cause for the requested criminal complaint and arrest warrants:

### August 27, 2020 Sale of Crack Cocaine to UC

a.      On August 20, 2020, ATF Special Agents Russell Johnson and Richard Jury debriefed two ATF Confidential Informants, known as CI #28831 and CI #11356. From the debriefing, SA Johnson and SA Jury learned that the

3

CI's had met a black male who introduced himself as "FREEWAY." FREEWAY told the CI's that he sold crack cocaine, marijuana and pharmaceutical pills. FREEWAY provided his cellular telephone number to the CI's as (313) 704-3861. SA Johnson used law enforcement databases and identified "FREEWAY" as James MCGHEE by the cellular telephone number that he provided to the CI's. SA Johnson also obtained a State of Michigan Driver's License photo of James MCGHEE and showed it to CI #28831 who affirmed that it was the individual that he/she met, known as FREEWAY. SA Johnson queried MCGHEE's criminal history and discovered that he has prior felony convictions for armed robbery (2015 and 2008), felony firearms possession (2008), and attempted delivery of a controlled substance (2007). MCGHEE'S criminal history also includes prior arrests for assault (2008) and burglary (2020).

      b.     On August 26, 2020, CI #28831 called MCGHEE at phone number (313) 704-3861 in order to ask MCGHEE to sell narcotics to his/her associate, an ATF Undercover Agent ("UC"). The telephone and text message communication between the CI and MCGHEE continued through 8/27/2020, which is when MCGHEE agreed to sell the CI and the UC one ounce of crack cocaine for $1,850.00. MCGHEE texted the CI the address of "18145

Fitzpatrick St" (18145 Fitzpatrick Ave, Detroit, MI) as the meeting location where the transaction would take place.

      c.    On August 27, 2020, ATF Agents conducted an undercover controlled purchase operation with the UC and CI #28831 that was audio/video recorded. At approximately 2:40pm, the CI placed a phone call to MCGHEE at phone number (313) 704-3861 to tell MCGHEE that he/she and the UC were on their way. MCGHEE affirmatively acknowledged and stated that his source of supply (SOS) was approximately five (5) minutes away. The UC and CI then departed from the predetermined staging location, traveled to 18145 Fitzpatrick Ave., Detroit, MI, and parked the undercover vehicle (UCV) in front of the apartment complex located at 18145 Fitzpatrick Ave. At approximately 2:53pm, the CI called MCGHEE and asked him where he was and MCGHEE said he would be coming out to meet them shortly.

      d.    At approximately 2:54pm, the CI and UC observed MCGHEE approaching on foot, from the back of the apartment complex. The CI then exited the UCV and allowed MCGHEE to enter the front passenger seat as the CI entered the rear passenger seat. Immediately upon entering the UCV, MCGHEE stated, "He about to pull up right now, I just talked to him." MCGHEE then introduced himself to the UC as "Freeway." At approximately 2:57pm, MCGHEE placed a phone call to an associate, who the UC believed

5

based on the subsequent conversation was MCGHEE's source of supply, and placed him on speaker phone. While MCGHEE was holding his cell phone, the UC could see the contact name "Steve" displayed on MCGHEE's phone screen. (As described in Paragraphs 5(l) and 5(u) of this Affidavit, "Steve" was subsequently identified as John Steven TOLBERT, and hereinafter, will be referred to as such). MCGHEE stated, "What's up OG, how long you gonna be, baby?" TOLBERT then replied, "Shit, c'mon… c'mon." MCGHEE stated, "He in the back right now" and then immediately placed a phone call to a female and stated, "Yeah, he in the back, baby." (As described in Paragraphs 5(k) and 5(u) if this Affidavit, the female was subsequently identified as Kenyetta Nicole COLSTON, and hereinafter, will be referred to as such). MCGHEE then told the UC to pull into the back of the apartment complex.

e.     As the UC began to drive, [in reference to TOLBERT] MCGHEE stated, "He a good ni**a though man. You cop from him enough man, you know what I'm sayin?" The CI then asked MCGHEE, "The ticket ever get lower?" MCGHEE answered, "Yeah you fuck with him, you'll get lower. Or you ever fall off, say you take a fall off or somethin' but you been fuckin' with him consistently, you feel me? He'll "uh" (as MCGHEE made a giving motion with his hand) take that, get back on your feet. That's how he did, that's how he did me. I blew threw two hundred thousand, you hear

6

me. 'Cause my momma died and shit and she didn't want me selling dope no more... So I stopped selling dope, got me a job driving the bus..." The UC understood MCGHEE to be referring to TOLBERT in this context. Based on my training and experience, I understood MCGHEE to mean that if the UC purchased enough narcotics from TOLBERT, then the prices would be more favorable for the UC. Also, based on my training and experience, I understood MCGHEE to reference TOLBERT in saying that if the UC ever needed to be "fronted" any narcotics because he needed money, then TOLBERT would give them to the UC without having the UC pay for them first. Based on the statements made by MCGHEE in reference to TOLBERT, it is implied that there would be an understanding that the UC would pay back later because there would be a level of trust, based on frequent business dealings together. In this hypothetical scenario presented by MCGHEE, the UC would be able to obtain quantities of narcotics from TOLBERT in a flexible manner.

f.     As the UC was pulling into the rear parking lot, the UC observed a Buick Lacrosse sedan that was parked behind the apartment complex. MCGHEE stated, in reference to the Buick sedan, "Oh there he go right there," (see *FIG. 1* below), referring to his associate, TOLBERT in the Buick sedan. MCGHEE then told the UC to park in front of the rear entrance of the apartment complex. The UC then observed COLSTON exiting the building,

7

(see *FIG. 2* below), and MCGHEE stated, in reference to COLSTON, "That's my girl right there." After the UC parked, MCGHEE exited and walked over to the driver's side door of the gray Buick, where TOLBERT was the sole occupant.

       g.      While MCGHEE was with TOLBERT, COLSTON approached the rear passenger door of the UCV where the CI was sitting. COLSTON asked the CI if he/she had "the money." The CI advised that he/she was not going to provide any money until he/she had the crack cocaine in hand and COLSTON advised that she was not going to provide anything until she had the money in hand. MCGHEE then returned and the UC told him that he (the UC) had the money and showed MCGHEE and COLSTON the cash roll of pre-recorded Agent Cashier Funds (ACF).



*FIG. 1*                                              *FIG. 2*

       h.      MCGHEE then entered the UCV and asked the UC to let him count it, to make sure it was not "fake." The UC asked MCGHEE how much he owed and MCGHEE stated "$1,850.00." The UC then counted out $1,860.00 in

ATF ACF and handed it to MCGHEE. The UC asked MCGHEE if he had

change and MCGHEE responded that he only had enough cash in

denominations to provide the UC with $5.00 change. The UC acknowledged

and MCGHEE then counted out the money for himself and provided the UC

with $5.00 in change. After confirming a count of $1,860.00, MCGHEE handed

the money to COLSTON, who had remained standing outside of the front

passenger door. These exchanges were all audio and video recorded.

   i.  COLSTON took a short step away from the UCV and then

immediately returned, (realizing she had forgot to provide the crack cocaine),

and reached her hand back into the window and attempted to hand MCGHEE

the small plastic baggie containing the suspected crack cocaine. MCGHEE then

immediately moved his hand prior the baggie landing in it, and the baggie

landed in his lap. After handing MCGHEE the suspected crack cocaine,

COLSTON immediately walked over to the Buick and made contact with the

TOLBERT, who was sitting inside the vehicle.

   j.  MCGHEE then picked the baggie up off his lap and placed it in

cup holder of the center console, stating, "Don't do no hand to hands, baby."

The UC jokingly laughed, retrieved the baggie from the cup holder and placed

it on a digital electronic scale that the UC had previously placed on the center

console. As the UC did so, MCGHEE referred to the suspected crack cocaine as

"butterscotch." Based on my training and experience, in this context, "butterscotch" is a street vernacular term, commonly used to refer crack cocaine due to its color. The UC saw the scale read 24.3 (grams) and told MCGHEE that the ounce was light by approximately 3.5 grams. MCGHEE also confirmed the weight on the scale and then stated, "Let me tell him right now." MCGHEE exited the UCV and walked back over to the TOLBERT in the Buick, where COLSTON had remained outside of the Buick. MCGHEE and COLSTON then returned to the UCV. MCGHEE got back into the car and told the UC, "When you get hard, it's 24. You get soft, it's 28." Based on my training and experience, in this context, "hard" and "soft" are street vernacular terms, commonly used to refer to crack cocaine and powder cocaine, respectively. The UC affirmatively acknowledged, MCGHEE got out of the car, and the UC and CI departed.

k. ATF SA Daniel Bowling subsequently weighed and field tested the suspected crack cocaine purchased by the UC which produced a positive result for crack cocaine with a weight of approximately twenty-four (24) gross grams.

## Identification of COLSTON and TOLBERT

l. Following the August 27, 2020 controlled purchase operation, SA Johnson identified COLSTON as MCGHEE's female associate, by using

10

law enforcement databases. SA Johnson obtained a Michigan State Driver's License photograph of Kenyetta COLSTON and showed it to the UC who confirmed that COLSTON was the black female who participated on the August 27, 2020 narcotics transaction. SA Johnson discovered that COLSTON's criminal history includes prior felony convictions for assaulting/resisting/obstructing a police officer (2009), arson–real property (2011), and arson–preparation to burn property ($20,000 or more) (2011).

      m.    SA Johnson also utilized law enforcement databases to query the registered owner of the silver 2005 Buick Lacrosse that was present during the August 27, 2020 narcotics transaction. The query revealed that the registered owner of the vehicle is Teneisha Jene Tolbert, listed with an address of 9091 Ashton Avenue, Detroit, MI 48228. Queries of law enforcement databases also revealed that TOLBERT also resided at 9091 Ashton Avenue. Based on the vehicle registration address and name "Steve" that the UC saw on MCGHEE's cell phone, SA Johnson obtained the Michigan State Driver's License photograph of John Steven TOLBERT. Based on this photograph, the UC identified TOLBERT as the person who was sitting inside the silver Buick Lacrosse and participating in the August 27, 2020 narcotics transaction.

## September 2, 2020 Sale of Crack Cocaine to UC

n.      During the evening of August 28, 2020, MCGHEE sent a text message to the CI #28831 telling him/her to call back. When the CI called, MCGHEE asked him/her what the UC's "people" thought about the quality of the crack cocaine (that the UC had purchased on 8/27/2020). The CI stated that the quality was good and MCGHEE responded that his people did not really like it, but that he had recently purchased crack cocaine that was of higher quality. The CI affirmatively acknowledged and stated that the UC would be in contact with MCGHEE. The CI and MCGHEE remained in text message communication until 8/31/2020, when MCGHEE told the CI to have the UC call him and the CI agreed.

o.      On August 31, 2020, the UC texted MCGHEE at phone number (313) 704-3861. After no response from MCGHEE, on 9/1/2020 the UC texted MCGHEE again. In response, MCGHEE called the UC and explained that he had recently been released from jail over a domestic violence case. The UC affirmatively acknowledged and asked if he could "do the same thing" (purchase another ounce of crack cocaine) on the following day (9/2/2020). MCGHEE replied that he could provide another ounce and stated that he was going to try and get the source of supply to reduce the price. The UC affirmatively acknowledged and MCGHEE told the UC to call him

12

approximately 1-2 hours before he would be arriving. The UC and MCGHEE

remained in cell phone communication until 9/2/2020, for the purpose of

arranging the time and location of the meeting.

      p.    On September 2, 2020, ATF Agents conducted a second

undercover controlled narcotics purchase operation that was audio/video

recorded. At approximately 4:28 pm, the UC arrived and parked in the back of

the apartment complex located at 18145 Fitzpatrick Ave. The UC texted

MCGHEE that he had arrived and MCGHEE confirmed both by text message

and phone call that he was coming out shortly.

      q.    At approximately 4:25 p m, from a vehicle surveillance

position, SA Mark Davis observed John Steven TOLBERT exit the front door

of the residence located at 9091 Ashton Avenue Detroit, MI 48228. Just after

coming out of the residence, TOLBERT walked south across the lawn, and

walked onto the neighboring property, located at 9081 Ashton Avenue. SA

Davis saw TOLBERT looking around in all directions and acting in a

suspicious manner. TOLBERT slowly walked up onto the driveway of 9081

Ashton Avenue from the lawn, and while still looking around and watching his

surroundings, TOLBERT entered the backyard through the driveway gate and

walked towards the rear of the 9081 Ashton Ave residence to an older model,

dark blue, two-door, Buick vehicle with a white top. TOLBERT opened the

trunk of the vehicle, look around inside, reached into the vehicle's trunk and retrieved an item that he placed it into his pocket. TOLBERT then closed the trunk of the vehicle and walked back over to the driveway at 9091 Ashton Ave. At approximately 4:30 pm, SA Davis saw TOLBERT talking on his cellular phone in the driveway of 9091 Ashton Ave. TOLBERT then got into a grey 2015 Chrysler 300 sedan and proceeded north on Ashton Avenue, westbound on Cathedral Street, towards MCGHEE's location on Fitzpatrick Avenue. 18145 Fitzpatrick Avenue and 9091 Ashton Avenue are less than two blocks apart with a drive time of approximately 1 minute.

      r.     At approximately 4:33pm, MCGHEE exited the back of the apartment complex and got into the front passenger seat of the UCV that was parked in the rear parking lot of the apartment complex. As MCGHEE entered, he was simultaneously ending a cell phone conversation with the source of supply, who he referred to as "OG." MCGHEE stated that he (the SOS) was "here." In referring to the narcotics source as "OG," the UC understood that name to mean, TOLBERT, because on the August 27ᵗ transaction when MCGHEE had referred to TOLBERT as "OG." "OG" is street vernacular, meaning "original gangster." MCGHEE said the "OG" was "skeptical," however MCGHEE had assured the SOS that the UC was his, "people," meaning a trusted person. The UC affirmatively acknowledged and MCGHEE

then asked the UC if he had the money. The UC stated that he did, and then MCGHEE said that he wanted to count it. MCGHEE told the UC that the SOS reduced the price by $50.00, therefore, the price for the ounce of crack cocaine would be $1,800.00. The UC then counted out and handed MCGHEE the ATF ACF necessary for the transaction ($1,800.00).

s.     MCGHEE then stated that he would be right back, left his phone as assurance to the UC and at approximately 4:35pm, exited the UCV and re-entered the apartment complex. A couple minutes later, MCGHEE exited the same rear entry/exit of the complex, got back into the UCV, placed a small plastic baggie containing the suspected crack cocaine on the center console, and told the UC to place it on the scale. The UC placed the baggie on a digital electronic scale that the UC had previously placed on the center console. The UC observed the scale to read 24.5 (grams), acknowledging the correct weight. The UC then placed the suspected crack cocaine in the trap/built in hidden compartment within the UCV. The entire transaction between the UC and MCGHEE was audio and video recorded.

t.     A few minutes after MCGHEE handed the crack cocaine to the UC, surveillance units observed TOLBERT's vehicle arrive and park in the driveway of 9091 Ashton Avenue.

u.      ATF SA Daniel Bowling subsequently weighed and field tested the suspected crack cocaine purchased by the UC. The suspected crack cocaine weighed approximately twenty-four (24) gross grams and tested positive for the presence of crack cocaine.

### Toll Analysis of MCGHEE'S Phone Number during Controlled Buys

v.      On September 28, 2020, SA Russell Johnson analyzed toll records for MCGHEE'S cell phone number during the August 27, September 2, 2020 controlled undercover purchases in order to confirm that the source of supply that MCGHEE was communicating with and whom MCGHEE referred to as "Steve" and "OG" was in fact TOLBERT.

w.      As stated above in Paragraph 5(d), on August 27, 2020, during the first controlled purchase with MCGHEE, at approximately 2:57pm, the UC was able to observe MCGHEE'S phone screen up close and see that MCGHEE was on a live call with a cell phone contact listed as, "Steve." As seen in the figure below, at "14:57:35" MCGHEE was on a telephone call that he (MCGHEE) initiated, to telephone number 313-629-8362.

| (313) 704-3861 | 8/26/2020 | 20:01:44 | 0:01:30 | Incoming | Voice | (810) 425-1692 | CI#1 | CI ordered 1oz of crack |
| (313) 704-3861 | 8/27/2020 | 13:11:11 | 0:00:07 | Incoming | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 13:14:15 | 0:00:00 | Incoming | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 13:17:24 | 0:01:01 | Outgoing | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 13:23:59 | 0:00:50 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| (313) 704-3861 | 8/27/2020 | 13:25:21 | 0:02:13 | Outgoing | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 13:28:01 | 0:00:00 | Outgoing | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 14:14:46 | 0:00:14 | Outgoing | Voice | (313) 717-2122 | Kenyetta COLSTON | |
| (313) 704-3861 | 8/27/2020 | 14:16:08 | 0:00:00 | Outgoing | Voice | (313) 717-2122 | Kenyetta COLSTON | |
| (313) 704-3861 | 8/27/2020 | 14:39:23 | 0:00:36 | Incoming | Voice | (810) 425-1692 | CI#1 | |
| (313) 704-3861 | 8/27/2020 | 14:40:29 | 0:00:12 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| (313) 704-3861 | 8/27/2020 | 14:49:23 | 0:00:58 | Outgoing | Voice | (810) 425-1692 | CI#1 | |
| | 8/27/2020 | 2:50pm | | | | | | UC/CI arrive |
| (313) 704-3861 | 8/27/2020 | 14:50:38 | 0:00:32 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| (313) 704-3861 | 8/27/2020 | 14:52:37 | 0:00:27 | Incoming | Voice | (810) 425-1692 | CI#1 | |
| | 8/27/2020 | 2:54pm | | | | | | MCGHEE into UCV |
| (313) 704-3861 | 8/27/2020 | 14:56:21 | 0:00:22 | Incoming | Voice | (248) 573-9497 | | |
| (313) 704-3861 | 8/27/2020 | 14:57:35 | 0:00:08 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | MCGHEE observed calling "STEVE" |
| (313) 704-3861 | 8/27/2020 | 14:58:00 | 0:00:06 | Outgoing | Voice | (248) 573-9497 | | |
| | 8/27/2020 | 3:04pm | | | | | | UCV departs |

x.     On September 28, 2020, SA Johnson utilized law enforcement

databases and queried the telephone number: (313) 629-8362. SA Johnson

discovered that the telephone number was listed under TOLBERT'S name with

a residential address of 9091 Ashton Street, Detroit, MI. In addition, SA

Johnson requested a query of the telephone number through the Michigan

Department of Corrections (MDOC) since TOLBERT has previously been an

offender with MDOC. MDOC Probation Officer Theresa Krzyzak informed SA

Johnson that the telephone number (313) 629-8362 was the phone number

TOLBERT provided to MDOC. Also, PO Krzyzak provided documentation

regarding 9091 Ashton Street being listed as TOLBERT'S home address.

y.     SA Johnson also identified COLSTON'S phone number as 313-

721-2021, listed in the figure above, from August 30, 2020 and September 1,

17

2020 police reports where MCGHEE was arrested for domestic violence and

COLSTON was listed as the victim and provided 313-721-2021 as her

telephone number

z.      With regard to the September 2, 2020 controlled buy, following

a 1 minute and 49 second phone call between the UC and MCGHEE during

which MCGHEE agreed to sell the UC crack cocaine, MCGHEE immediately

called TOLBERT:

| (313) 704-3861 | 9/1/2020 | 21:50:27 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
|---|---|---|---|---|---|---|---|---|
| (313) 704-3861 | 9/1/2020 | 21:50:59 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/1/2020 | 21:51:14 | 0:01:49 | Outgoing | Voice | (313) 710-9150 | UC | UC ordered 10z of crack |
| (313) 704-3861 | 9/1/2020 | 21:54:42 | 0:00:14 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |

aa.     As seen in the table below, in the midst of back and forth

communication between the UC and MCGHEE on September 2, 2020 during

which they discussed the narcotics transaction, MCGHEE made two phone calls

to TOLBERT at 16:02:54 and 16:17:43. Shortly after the UC arrives to meet

MCGHEE for the narcotics transaction, MCGHEE calls TOLBERT twice, at

16:29:41 and 16:32:47. MCGHEE was ending the second call with TOLBERT,

who he referred to as "OG," as he was entering the UCV to meet with the UC. :

| (313) 704-3861 | 9/2/2020 | 15:11:47 | 0:00:33 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 15:12:41 | 0:00:00 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:02:10 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:02:45 | 0:00:00 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:02:54 | 0:00:16 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| (313) 704-3861 | 9/2/2020 | 16:04:03 | 0:00:00 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:06:12 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:16:24 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:16:32 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:17:35 | 0:00:00 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:17:43 | 0:00:28 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| | 9/2/2020 | 4:25pm | | | | | | Surv observed TOLBERT exiting 9091 Ashton to 9081 |
| | 9/2/2020 | 4:27pm | | | | | | TOLBERT at trunk of Buick |
| | 9/2/2020 | 4:28pm | | | | | | UC arrives |
| (313) 704-3861 | 9/2/2020 | 16:29:16 | 0:00:00 | Incoming | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:29:34 | 0:00:00 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:29:41 | 0:00:23 | Outgoing | Voice | (313) 629-8362 | John Steven TOLBERT | |
| (313) 704-3861 | 9/2/2020 | 16:30:20 | 0:00:20 | Outgoing | Voice | (313) 710-9150 | UC | |
| (313) 704-3861 | 9/2/2020 | 16:32:47 | 0:00:18 | Incoming | Voice | (313) 629-8362 | John Steven TOLBERT | |
| | 9/2/2020 | 4:33pm | | | | | | MCGHEE hangs up on phone call with "OG"/enters UCV |
| | 9/2/2020 | 4:41pm | | | | | | MCGHEE exits UCV |

bb.    In analyzing the frequency of MCGHEE and TOLBERT'S cell phone communications, SA Johnson observed that between August 27, 2020 and September 5, 2020, MCGHEE and TOLBERT communicated seventy (70) times.

19

## IV. Conclusion

6.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that from at least August 27, 2020 through September 2, 2020, within the Eastern District of Michigan, James MCGHEE, John Steven TOLBERT and Kenyetta COLSTON knowingly and voluntarily conspired to distribute a controlled substance, to wit: crack cocaine, in violation of Title 21, United States Code, Sections 841(a) and 846.

Mark Davis, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my presence
and/or by reliable electronic means.

HONORABLE PATRICIA MORRIS
UNITED STATES MAGISTRATE JUDGE

Date:   October 6, 2020

20